EUGENE F. O'CONNOR, JR., and Others, Plaintiffs, *v.* THE CITY OF SARATOGA SPRINGS, Defendant.

Supreme Court, Saratoga County, March 16, 1933.

*Edmund F. Driggs,* for the plaintiffs.

*Richard J. Sherman, City Attorney [John A. Slade* of counsel], for the defendant.

LAWRENCE, J. This is an action brought to recover possession of a public street known as the " Speedway " in the city of Saratoga Springs, in the county of Saratoga.

The case comes before this court on a motion by plaintiffs to strike out defenses on the ground that they are insufficient in law.

On May 28, 1901, Eugene F. O'Connor conveyed the land in dispute to the village of Saratoga Springs, whose successor the defendant is. The deed contained this provision: " This grant is upon the express condition that the Village of Saratoga Springs shall construct and forever maintain a speedway on the premises herein described at its own expense, the construction of such speedway to be begun within two years from the date hereof, and if said speedway is not constructed within said time, and further after the time whenever it may occur, when said village shall fail to keep and maintain said land for the purposes of said speedway, this grant shall be wholly ineffectual, and the property herein conveyed is to revert to the grantor, his heirs, assigns or legal representatives."

Eugene F. O'Connor retained ownership of the land on each side of this grant. Plaintiffs are the only surviving heirs at law and next of kin of Eugene F. O'Connor. Their suit is on the theory that the above provision created a condition subsequent for breach of which they seek to recover.

One of the defenses which the plaintiffs claim to be insufficient in law is based on the following facts: That after the execution and delivery of the deed from O'Connor to the village of Saratoga Springs and after the construction of the Speedway and full performance of all conditions within the time specified, said Eugene F. O'Connor, on October 7, 1902, conveyed to William C. Whitney forty-two acres of land, described as bounded " on the north by a new street recently laid out by the Village and Town of Saratoga Springs, known as the ' Speedway ' * * * together with all the right, title and interest of the party of the first part [*i. e.,* O'Connor] in said Speedway."

The 1902 deed also contained the provision (immediately following the quoted words *supra*): " Together with the appurtenances, and all the estate and rights of the said party of the first part in and to said premises."

This same defense, to which plaintiffs object, also sets forth that

Eugene F. O'Connor later mortgaged his land on the other side of the Speedway, which mortgage was foreclosed and the premises conveyed to the mortgagee, the Adirondack Trust Company of Saratoga Springs, by a referee's deed, dated January 29, 1908.

On these facts the defendant claims that O'Connor recognized the Speedway as a public street and extinguished the condition and destroyed and waived any and all right of re-entry for himself or his heirs for breach thereof.

For the purposes of this motion the parties agree that a breach later occurred.

Two questions then arise: (1) Was the conveyance from O'Connor to Whitney an attempt to assign or convey his right of re-entry for condition broken? (2) If so, does the attempt extinguish the condition and give the city a fee simple absolute?

Plaintiffs claim that when a street exists within a village, two kinds of rights arise. One of these rights, they say, is the right of the general public to use the street; the other, the right of abutting owners in the street, including easements of ingress and egress, and of light and air. They state that these rights are in no way connected with the manner in which the village acquired the land. From this, they argue that what O'Connor conveyed to Whitney by the phrase " all the right, title and interest of the party of the first part in said Speedway " were the rights which he, O'Connor, had as such abutting owner.

This line of argument might have some force were it not for the fact that the grant to Whitney also provides, " Together with the appurtenances and all the estate and rights of the said party of the first part in and to said premises." This is the usual habendum clause in a deed and it is elementary that such words, which must be construed strictly against the grantor, convey to Whitney the rights which O'Connor had as abutting owner.

Again applying the rule of strict construction against O'Connor, it follows that the phrase, " all the right, title and interest of the party of the first part in said Speedway," must be held to be an attempt to assign to Whitney O'Connor's right of re-entry for condition broken. The phrase is broad enough to cover the only right remaining in him — his right of re-entry for condition broken. It is broad enough to carry title to the land in question. (*Trowbridge* v. *Ehrich*, 191 N. Y. 361, 367.) The fact that the grantor says " in said speedway " rather than " in said street " shows that he was not referring to his rights as abutting owner but to his right to re-enter.

The question remains whether this attempt extinguishes the condition. At common law the attempted assignment of the right

of re-entry for condition broken extinguished the condition so as to give the holder of the base fee a fee simple absolute. Coke states the reason to have been to avoid maintenance. (Co. Litt. 214-a.) Statutory alteration of that rule permitted assignees of the grantor in fee reserving rent the right to re-enter in order to enforce collection. (*Van Rensselaer* v. *Ball*, 19 N. Y. 100.) Since that time conditions subsequent have not been favored. Kent states that they are also strictly construed because they tend to destroy estates. (4 Kent Comm. 129.) Public interest dictates that real property shall be readily transferable and that titles shall be reasonably marketable. (*Calvary Presbyterian Church* v. *Putnam*, 249 N. Y. 111; Editorial, N. Y. L. J. Apr. 17, 1931, p. 332.)

Plaintiffs claim that this is not the law of New York and attempt to explain several decisions which seem to be binding on this court.

This is clearly the rule adopted in several of our sister States. (*Rice* v. *Boston & Worcester R. R.*, 12 Allen [Mass.], 141; *Hooper* v. *Cummings*, 45 Me. 359, 366; *Humphreys County Board of Education* v. *Baker*, 124 Tenn. 39; 134 S. W. 863; *Halpin* v. *School District*, 224 Mich. 308; 194 N. W. 1005; *Brill* v. *Lynn*, 207 Ky. 757; 270 S. W. 20; *Stevens* v. *Galveston, H. & S. S. Ry.*, 169 id. 645; revd. on other grounds, 212 id. 639; *School District* v. *Wallowa County*, 71 Ore. 337; 142 Pac. 320; *Wagner* v. *Wallowa County*, 76 Ore. 453; 148 Pac. 1140; *Sharon Iron Co.* v. *City of Erie*, 41 Penn. St. 341; *Ross* v. *Sanderson*, 63 Okla. 73.)

In many of these States the cases of *Tinkham* v. *Erie R. R. Co.* (53 Barb. 393, 396) and *Berenbroick* v. *St. Luke's Hospital* (23 App. Div. 339; appeal dismissed, 155 N. Y. 655) have been cited with approval and used as a basis for their own rulings.

Plaintiffs, however, argue that the effect of the New York decisions is that a condition subsequent ends only when its creator or his heir makes an instrument wholly inconsistent with the thought that the possibility of reverter should survive in any one. They claim that an express release or a deed of any kind to the owner of the base fee is the only method by which such right can be extinguished, and that otherwise the right or possibility should descend to the heirs as representatives. Their theory is that, since it cannot pass to another, it cannot go out of the grantor in any other way.

In *Tinkham* v. *Erie R. R. Co.* (*supra*) the holding of the court at General Term is that a conveyance on condition subsequent followed by another conveyance of a part of the same premises from the original grantor to a third party destroys the condition in the first deed, and precludes recovery for breach by the heir of the original grantor. That decision would seem to state the New York law.

But plaintiffs emphasize that portion of the opinion in which the court says: " That deed, though void as against the N. Y. and Erie Railroad Company and the defendant, was operative as between the parties to it, and passed Drake's title, or whatever other rights he had to the land embraced in it. * * * That deed certainly estops the plaintiff from recovering any portion of the land which it purports to convey; and title in a third person is always a defense to an action of ejectment."

Plaintiffs argue that this is merely a decision that the rights of Drake had passed to the Cayuga and Susquehanna Railroad Company, to whom the later conveyance was made, and that the decision errs because the assignee can take nothing. But the language used, " that deed certainly estops the plaintiff from recovering," seems to show that the court intended to hold that rights went out of Drake and it would not, of course, be necessary to decide there whether the Cayuga and Susquehanna Railroad Company took anything. As the cases cited in that portion of the opinion were cases in which a grantor out of possession makes a grant, the effect of which is to give his grantee rights against all the world except the adverse possessor and those claiming under him, it may be that the court thought that if Drake should ever reacquire the land in any manner, his rights would pass to the Cayuga and Susquehanna Railroad Company by that deed.

It would seem, however, that a later statement in the opinion was the real basis for the deision: " Whenever the reversion is granted by the maker of the condition, the condition is gone " (*Hooper* v. *Cummings*, 45 Me. 359). Moreover, *Halpin* v. *School District* (*supra*) states that the decision in the *Tinkham* case was based on *Hooper* v. *Cummings*.

Following the statement above, the court holds that the condition in the deed to the New York and Erie Railroad Company was destroyed by the later conveyance. If the court had intended to have it understood that the rights therein passed to the Cayuga and Susquehanna Railroad Company, the word " destroyed " would not have been used.

The *Tinkham* case has never been reversed. It is cited by our courts as holding that the right is extinguished, not conveyed or assigned to the assignees. (See Editorial, N. Y. L. J. Apr. 17, 1931, p. 332.)

In *Underhill* v. *Saratoga & Washington R. R. Co.* (20 Barb. 455, 467) a statement is made to the same effect, though not necessary for the decision because the assignee was suing: " If I am correct in the former position I have taken, that by the assignment of the Lawrences to the plaintiff, the condition was gone, and the

defendants obtained an absolute estate, it follows that they are discharged from the condition and all damages for a breach of it." Judgment was given for the defendant.

In *Berenbroick* v. *St. Luke's Hospital* (*supra*) the actual decision is that a deed from the conditional grantor to any holder of the base fee extinguishes the condition. This is merely a case of release. The court, however, states: " And any deed by which the original grantor or his heirs undertakes to transfer, assign or grant the land or the reversion of it while it may be ineffectual to convey title to the grantee, does operate to put an end to the rights of the grantor." This statement is followed by citations of authority, including the *Tinkham* case, and we may assume the court thought that rule to be the law in New York.

Plaintiffs contend that *Southwick* v. *New York Christian Missionary Soc.* (151 App. Div. 116; affd., 211 N. Y. 515) is authority for their view that the rule claimed by the defendant to be the law of New York is unknown to our courts. In that case three heirs conveyed their rights in the land to the fourth heir, who sued for breach of the condition. The court said (at p. 120): " If all the heirs at law assigned to a stranger so that their right to declare the title forfeited is gone, there is no one to represent the grantor. * * * Even if the conveyance by these heirs at law to the plaintiff did extinguish their right of re-entry for condition broken, it does not affect the plaintiff's right to recover the premises in their entirety. The right of re-entry is indivisible, and if there is any one to represent the original grantor that person can avail himself of the breach, and if there are other heirs capable of enjoying the benefit with such person the re-entry will be for the benefit of all. If for any reason the other heirs have lost their right, then the re-entry will be available solely to the heir at law who has not parted with the right."

This, then, must be taken to be an exception to the general rule. That the general rule is well settled must be concluded from the dissenting opinion at page 127.

No better answer can be given to the plaintiffs' argument regarding this case than that set forth in 12 Columbia Law Review, 649, to the effect that as this conveyance from the three heirs to the fourth can give rise to no new litigious rights, the assignment would not be maintenance and that the decision of the court is correct.

*Calvary Presbyterian Church* v. *Putnam* (*supra*) merely holds that a quitclaim deed from the heirs of the original grantor of land on condition subsequent binds unborn heirs. It was unnecessary

there to pass on the question arising in this case, though Judge O'BRIEN points out (at p. 115) that the grantor " could have taken any course agreeable to him by which this possible right might have been divested." In the same case (reported below in 221 App. Div. 502, 504) the court said: " While the grantor cannot assign his right of re-entry to a stranger, he can put an end to his own right of re-entry by a release or deed to his grantee or a convey-ance to any other person, which is inconsistent with the original grant."

The result I reach is that the *Tinkham* case has long been con-sidered to be the law of New York. Old precedents and principles are not to be lightly cast aside unless they are an obstruction under present conditions. (*Mitchill* v. *Lath*, 247 N. Y. 377, 380.) This rule is not such an obstruction for it increases marketability of estates.

In view of the authority in this State, as I find it, it is unnecessary to more than refer to the many text writers in accord with this view. (2 Washb. Real Prop. [6th ed.] § 952, p. 13; 1 Tiffany Real Prop. [2d ed.] p. 316; 23 R. C. L. title Reversions, § 10, p. 1105; 1 Gerard Real Prop. [6th ed.] § 291. See, also, citations in *Rice* v. *Boston & Worcester R. R., supra.)*

I, therefore, conclude, as pointed out in *Rice* v. *Boston & Worcester R. R. (supra)* and *Wagner* v. *Wallowa County (supra)*, that the fact that there has been an attempted assignment is not without conse-quence to the grantor. He cannot assign and then base his re-entry on the invalidity of his own act. This is also true of his heirs.

I, therefore, hold that a fee simple absolute is now vested in the city. It is, of course, held for the public use. (*People ex rel. City of New York* v. *N. Y. R. Co.*, 217 N. Y. 310, 315.)

As I hold the second defense to be a complete defense to this action, it would seem unnecessary to pass on the first defense, which alleges that the Speedway was constructed in accordance with section 38 of chapter 178 of the Laws of 1901, and that it has since been a public highway and that no proceedings have been taken for the closing or abandonment thereof.

The plaintiffs take the position that the facts alleged in this second separate defense cannot be controverted and that if that defense is good, there would be no necessity for a trial. The plain-tiffs move for an order striking out the defendant's first and second defenses upon the ground that they are respectively insufficient in law.

The plaintiffs, in testing the sufficiency of the affirmative defenses under rule 109 of the Rules of Civil Practice, have opened to attack the sufficiency of their complaint, for a motion of this kind searches

the record. The holding that the second defense is good in law necessarily implies that the complaint is bad. The court will, therefore, deem a cross-motion to dismiss the complaint to have been made by the defendant under rule 112. (*Cavanaugh* v. *Hutcheson*, 140 Misc. 178, 184, and cases cited.)

The motion to strike out defenses is denied and the complaint dismissed, with costs.